KEPPELE *et al. v.* CARR *et al.*  CARR *et al. v.* KEPPELE *et al.*

## Bills of exchange.—Damages.

The damages on a protested bill belong to the party at whose risk it was remitted.

A. & B., being indebted to C. & Sons, foreign merchants, delivered a bill of exchange, drawn by one S., and indorsed by A. & B., to C., one of the firm of C. & Sons, but he refused to remit it on their account and risk: the bill was returned unpaid and protested, and then A. & B. ten-dered to C. the principal and interest of it, and demanded its restitution, with the protest, but he rejected this offer, saying, that he would settle it with S.; B. then told C., that they, A. & B., should consider the bill at the risk of C. & Sons, from that day: C. afterwards entered into an arrangement with S., and took his note for principal, damages and charges, but before the note became due, S. failed: A. & B. sued C. & Sons for the damages included in the note, with interest from its date; and C. & Sons sued A. & B., for the original consideration of the in-dorsement of the bill: *Held*, that A. & B. were entitled to their demand, and that their debt to C. & Sons was paid in law, by the conduct of the latter.

THE case was briefly this: Keppele & Zantzinger, Philadelphia mer-chants, being idebted to Carr & Sons, English merchants, for goods sold and delivered, bought a bill of exchange from John Swanwick for the amount, drawn in their favor, and indorsed by them; delivered the bill to one of the partners of Carr & Sons, who was in Philadelphia, but who expressly refused to remit it, on the account and risk of his house; and informed Carr & Sons by letters, dated respectively the 20th of May, and 20th of June 1796, "that the bill, when paid, will be in full for merchandise (high charged) to our G. Keppele, by your invoice, dated the 31st of March 1795." The bill was duly presented and protested for non-acceptance, on the 27th of June, and for non-payment, on the 29th of August 1796; and on its be-ing returned with the protest, notice was regularly given to the drawer and indorsers. Keppele & Zantzinger then (about the 5th of November 1796) tendered to Carr the principal and interest of the bill, and demanded restitu-tion of it, with the protest; but Carr refused to accept the tender, or to deliver up the bill; saying, "that he would settle the bill himself with Swanwick:" whereupon, Zantzinger declared, "we shall consider the bill at your risk, from this day." Carr then entered into an arrangement with Swanwick, took his promissory note for principal, damages and charges, and delivered to him the bill and protest. Before the note became due, *156] \*Swanwick had failed; and Carr demanded payment from Keppele & Zantzinger, on the footing of the original account for goods sold. On the other hand, Keppele & Zantzinger demanded from Carr, the twenty per cent. damages, included in Swanwick's note, with interest from the date of the note. And upon these adverse claims, the present actions were insti-tuted, and tried at the same time.

At the trial of the cause, three grounds were taken in favor of *Carr & Sons:* 1st. That the language of the letters, written by Keppele & Zantzinger

was not meant to retain an interest in the bill of exchange; but to preserve unimpaired the original contract, if the bill was not honored; or, at most, to protect them, as indorsers, from being liable for damages; but not to entitle them to receive any. Carr & Sons had a complete power over the bill; they might have cancelled it, after acceptance, for the acceptor's note; or they might have released it, upon any, or no consideration, to the drawer's agent in England; the only effect of which would be, to render the bill payment of the preceeding debt, as in *Watts* v. *Willing*, 2 Dall. 100. And *Chapman* v. *Steinmetz*, 1 Dall. 261, differs from this case; because the suit was there against the drawer of the bill, who was also the original debtor, expressly stipulating, that he should not be liable for damages; and here Carr & Sons do not sue Keppele & Zantzinger on the bill, for damages. 2d. That whatever might be the operation of the original contract, the claim of Keppele & Zantzinger to damages was extinguished, when Zantzinger declared, that "the bill would be considered, for the future, at the risk of Carr & Sons;" changing essentially the relative responsibility of the parties. 3d. That the suit brought by Keppele & Zantzinger, for the damages, was a disaffirmance of any implied contract, that the bill of exchange was paid or received in satisfaction of the precedent debt; and consequently, Carr & Sons are entitled to recover upon the old account, whatever may be their responsibility for the principal, as well as the damages of the bill. In that respect, too, Keppele & Zantzinger have chosen to regard them as agents; and can only be entitled to recover what Carr & Sons received, to wit, Swanwick's promissory note.

In favor of *Keppele & Zantzinger*, it was urged: 1st. That the remittance of the bill of exchange was, by express stipulation, upon their account, and at their risk; and the terms of the remittance came, pointedly, within the principle of *Watts* v. *Willing*, and *Chapman* v. *Steinmetz*. Until the bill was paid, in England; or, in case of a protest, until it was recovered from the drawer here, it was, exclusively, at the risk of Keppele & Zantzinger; and they, who were exposed to the whole risk, were entitled, in law and equity, to the whole benefit of an indemnity. *2d. That [*157 the declaration of Zantzinger does not, either in the intention or the expression, amount to a waiver of the claim for damages; nor can it, in any respect, impair or alter the conditional contract on which the remittance was made. 3d. That the conduct of Carr & Sons has made the bill of exchange an absolute fund for the payment of the precedent debt; and that debt was eventually extinguished and satisfied, by taking Swanwick's note: but their conduct creates no right to receive more than the amount of the precedent debt; and consequently, they are liable for the damages in one suit, though they cannot recover upon the account, in the other suit.

SHIPPEN, Justice.(a)—The sum in controversy is small; but the principle of the decision is of great and general importance. What is the law, the justice and the usage, upon the subject? It appears from two cases

(a) The Judges differing in opinion, each addressed the jury; but the Chief Justice, on account of indisposition, added only a few words, in affirmance of the sentiments of SHIPPEN, Justice.

Keppele v. Carr.

that have been cited (1 Dall. 261; 2 Ibid. 100), to be the settled law, that where a bill of exchange is not paid and received, in satisfaction of a debt, due from a merchant to his correspondent, it goes at the risk of the debtor; and the creditor who remits it for acceptance and payment, stands on the footing of an agent only, until the bill is actually paid. Then, in point of justice, it seems but fair, to allow every incidental or casual profit and emolument, to the party who is exposed to all the hazard and inconvenience of the remittance. As to the usage, the jury are best able to ascertain it from personal experience; but so far as I have been able to collect information, there appears to be only one opinion among commercial men; to wit, that *he* is entitled to the damages, on whose account and risk the bill of exchange is remitted. To disturb this usage, would, obviously, operate very injuriously to the American merchant, in favor of foreign merchants; but if the usage were not established, or if it were an unreasonable one, our decision would not depend upon considerations of that nature: we should say, *fiat justitia, ruat cœlum !*

Let us, then, consider the facts of the present case, under this general view of the law, justice and usage of merchants. The debt was due and payable in London: the creditor refused to accept payment here, on account of the rate of exchange: the immediate loss and expense of the remittance fell, therefore, on the debtor, as well as the contingent risk of the bill. The creditor also refused to take the hazard of the remittance to himself; and, in effect, agreed to act as the agent of the debtor, in all that related to the bill of exchange. There is not, in short, the least doubt on this important fact, that the bill was remitted on account of Keppele & Zantzinger, though *158] indorsed by them *to Carr & Sons. When the bill returned protested, the debtor demanded it, tendering the amount of principal and interest; but this overture to a payment was peremptorily rejected by Carr; and he assumed the sole management of settling the business with Swanwick. Whether it was settled by a cash payment, or by a promissory note, is not material; the bill being delivered up without the authority or consent of Keppele & Zantzinger; and Carr & Sons becoming, consequently, responsible to them for the full value of their interest in the bill. That interest was the amount of the damages, on the principles which have been suggested; particularly, because Keppele & Zantzinger defrayed the whole expense, and ran the whole risk of the remittance. Suppose, produce had been shipped to Carr & Sons, to be sold on account of the shippers, but the proceeds were to be applied to the payment of their debt, could it be pretended, that the consignees would be entitled to any profit on the sale; or that, in case of a loss, it must be borne by them? No, in that instance, and I think, with a parity of reason, in the instance before the court, Carr & Sons are neither to know profit or loss, in the transaction. It is surely enough for the British merchant to enjoy the fair profit charged upon the goods, which he sells and transmits to his American customers; without being allowed to speculate upon the damages on bills of exchange, the usual medium for paying his account, in a way, that enables him to pocket all the gain, and to cast upon them all the loss.

In justice to Carr & Sons, however, it is proper to take notice of another ground, on which their cause has been placed; the only ground, indeed, that has created any doubt or difference in the minds of the judges. On the 5th

### Keppele v. Carr.

of November 1796, when they refused to accept a tender of principal and interest, Keppele & Zantzinger made a declaration, which, at the first view, looked as if they relinquished every pretension to the bill of exchange : " We shall consider the bill as at your risk, from this day." This expression, however, cannot, in law, be regarded as constituting a new contract or agreement ; for, certainly, there was no mutuality of bargain; no coincidence of proposition and assent. But it may, in point of fact, be regarded as an extinguishment of the conditional terms of the remittance ; as an abandonment of all claim upon the bill of exchange ; a fact which the jury must decide. It appears to me, however, that if law, justice and usage had previously vested the right to damages in Keppele & Zantzinger, it is too light, too equivocal, an expression, to be construed into a waiver of that right ; particularly, when it may with, at least, equal propriety, be construed to mean, that they should consider Carr & Sons responsible, if Swanwick failed in payment.

On the action by Carr & Sons, against Keppele & Zantzinger, it is unnecessary to detain the jury with any explanatory *remarks. The account was settled ; and, by the conduct of the plaintiffs, it has been completely paid, in law and justice. [*159

SMITH, Justice.—I concur in the opinion of my venerable brother, as to the second action ; and subscribe, indeed, to all the general principles, which he has stated, in reference to the first. But it is my misfortune to view in a different manner from him, the important transaction of the 5th of November 1796: for whatever may have been the antecedent rights of Keppele & Zantzinger, the conversation of that day, does, in my opinion, essentially change the situation of the parties. The bill was thenceforth entirely at the risk of Carr & Sons ; and if Swanwick had failed, the very next day, before any arrangement for payment, or before any *laches* in the endeavor to obtain payment, Carr & Sons could never have recovered from Keppele & Zantzinger, either on the original account, or on the indorsement of the bill. The risk of Keppele & Zantzinger being thus at end, all their legal and equitable claim to the damages, on account of risk, must also be extinct.

In an early stage of the transaction, too, I think, there is some fallacy in treating Carr & Sons merely as the agents of their debtor, in relation to the bill of exchange. If they had lost or destroyed it; if, on the protest, the drawer's friend had paid it in London, for his honor ; or, if Carr & Sons, after an acceptance, had released the acceptor, with or without a consideration ; surely, in none of these instances, could a claim to twenty per cent. damages arise ; and all that Keppele & Zantzinger could insist upon, in law, justice or usage, would be, that the bill, under such circumstances, should be deemed a payment of their debt, notwithstanding the conditional terms of the remittance.

In these sentiments, I am uninfluenced by any consideration of attachment to the American merchant, or of enmity to the British merchant ; and I think, they will be found to conform best to the honor of all merchants, which, like the chastity of a female, should be free from suspicion, as well as free from taint.

McKEAN, Chief Justice.—Upon the refusal of the tender, in November 1796, Zantzinger declared, that the bill of exchange should be at the risk of

Carr & Sons for the future. The meaning of this declaration, I understand to be (at least, it is a reasonable interpretation), that Carr & Sons themselves should be answerable to Keppele & Zantzinger, for the principal, interest and damages, even if Swanwick should become insolvent. Under the view of the case, I concur with my brother Shippen, in all his remarks which he has delivered to the jury.

Verdict for Keppele & Zantzinger in both actions.

*Ingersoll and Brinton*, for Keppele & Zantzinger. *Dallas*, for Carr & Sons.